IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| RUFUS ROSS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-2582-JDT-cgc |
| | ) | |
| G. GREER, ET AL., | ) | |
| | ) | |
|     Defendants. | ) | |

ORDER DISMISSING CASE,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On July 28, 2014, Plaintiff Rufus Ross, booking number 13125515, a pretrial detainee at the Shelby County Criminal Justice Complex in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued on July 29, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Memphis Police Sergeant G. Greer, Memphis Mayor AC Wharton, and Memphis Police Director Toney Armstrong.[1]

The complaint alleges that, at approximately 10:45 a.m. on July 13, 2013, Jeremy Wilson was the victim of an armed robbery near his apartment. After Wilson returned home, three men armed with a revolver entered his apartment, ordered Wilson and his girlfriend, Angenetta Currie, into a closet, and stole cash, a handgun, and some jewelry. (ECF No. 1, ¶¶ 3-4 at PageID 3.)

---

[1] Although the case caption uses the designation "et al.," the Court will not speculate about the identity of any other person or entity Plaintiff intends to sue.

After the men left, Wilson ran outside, where a neighbor told him that he had seen some people running and a black truck leaving. Wilson drove to the exit gate, where he saw a black Ford Expedition driven by Robert Gathright. Wilson followed the Expedition for several blocks. The Expedition then pulled over, and the front seat passenger ran toward Wilson's vehicle and fired several shots at him with a gun. Wilson told the police that the shooter was Charles E. McClelland. Wilson flagged down a police car, told the officer about the shooting, and gave a description and license plate number of the Expedition. (*Id.* ¶¶ 5-7 at PageID 4.) The victims gave detailed descriptions of the three men in the Expedition. (*Id.* ¶ 8.)

Defendant Greer was assigned to investigate the robbery. He located the Expedition at 3306 Sarabee Lane. Reginald Ross and Robert Gathright, who police had seen inside the Expedition, were also present. (*Id.* ¶ 9 at PageID 5.) Reginald Ross, who had the keys to the Expedition, was detained. He gave a statement confessing to his participation in the robbery. He claimed to have acted only as a lookout. Later, Gathright also confessed and claimed to have been a lookout. (*Id.* ¶ 10.)

The Expedition was registered to Plaintiff, and Reginald Ross is Plaintiff's nephew. Defendant Greer called Plaintiff and asked him where his vehicle was, and Plaintiff replied that it was in his driveway. Greer allegedly told Plaintiff that Reginald Ross had been driving his vehicle and asked Plaintiff to come down to the police station. Plaintiff complied. (*Id.* ¶ 11.)

When Plaintiff arrived at the police station, Wilson was present. Greer stated in his report that Wilson identified Plaintiff as one of the suspects who had robbed him. Plaintiff avers that "Mr. Wilson clearly indicated that he did not recognize the Plaintiff." (*Id.* ¶ 12.) Plaintiff left the police station and returned home. (*Id.*)

2

The next day, July 14, 2013, Defendant Greer and other Memphis police officers returned to Plaintiff's house and detained him. (*Id.* ¶ 13 at PageID 6.) Greer coerced Plaintiff to sign a consent to search his residence by telling him that they only wanted to look around and did not think he had anything to do with the robbery. (*Id.* ¶ 14.) Plaintiff did not believe he had anything to fear from a search. However, Greer and the other officers "literally trashed the residence" in "a search and destroy mission." (*Id.* ¶ 15.) During the search, police seized a small gram scale, a black skull cap, a pair of men's high-top Nike athletic shoes, a gray t-shirt with "Army" written on the front, a pair of gray sweat pants, and a Tan Boony hat. (*Id.* ¶ 16.) Plaintiff alleges that "[t]he scale, and clothing . . . was never mentioned at all by the victims, nor was there any report made as to the description of suspect clothing. Like the skull cap, it was never mentioned either." (*Id.*) The victims allegedly described a nylon stocking and a black scarf. (*Id.* ¶ 17 at PageID 6-7; *see also id.* ¶ 8 at PageID 4 (the descriptions given by the victims).)

> The complaint also alleges:
>
> The police exaggerate the allegations in most criminal matters in order to charge the accussed [sic] with more serious charges. Then, the prosecutors' [sic] go along with the trumped-up charges, especially the more serious charges. The conduct has spun-out-of-control, and [100s and 100s] of defendants are caught in this web.
>
> 19. Furthermore, most pretrial detainees who are confined at the Shelby County Jail, set in jail for usually one, and one-half years or longer before the prosecution decides to prosecute. In other words, Shelby County is systematically depriving criminally accused persons of their fundamental right to a fast and speedy trial, which is designed to harass the defendant (oppressive pre-trial incarceration). Put another way, the intention of the District Attorney General's office is no doubt to gain a tactical advantage, induce guilty pleas. This practice has to be unconstitutional, and may constitute a governmental custom.

(*Id.* ¶¶ 18-19 at PageID 7.)

According to Plaintiff, Defendants "had direct knowledge that Plaintiff was not involved in the robbery, only his vehicle, which was taken without Plaintiff's knowledge." (*Id.* ¶ 20 at PageID 8.) Defendant Greer was allegedly unconcerned with Plaintiff's innocence and "only wanted another individual to charge — keep them statistics high, inflating the crime rate." (*Id.*) Consequently, Greer "fabricated and manufactured the fictitious allegations" against Plaintiff. (*Id.*) Specifically, Greer manufactured the scale, clothing and skull cap allegations to implicate Plaintiff in the robbery. (*Id.* ¶ 22.) Plaintiff does not dispute that the police seized these items during the search of his residence. Instead, he appears to claim that the police falsely deemed these seized items to be probative of his involvement in the robberies.

Greer's actions were allegedly taken with the implicit and explicit authorization of Defendants Wharton and Armstrong. (*Id.* ¶ 21.) According to Plaintiff, Wharton and Armstrong have knowledge of Greer's actions and encouraged them. (*Id.*) The District Attorney General also condoned Greer's actions because it "keeps her conviction rate high and inflates statistics." (*Id.* ¶ 22.)

The complaint asserts that Plaintiff was subjected to an unreasonable search and seizure of his property and person in violation of the Fourth Amendment. (*Id.* ¶ 23 at PageID 9.) He was also "deprived of Due Process of Law; Equal Treatment; and Fundamental Fairness, 5th and Fourteenth Amendments." (*Id.* ¶ 24.) Defendants also deliberately fabricated false allegations against Plaintiff. (*Id.* ¶ 27.) Plaintiff seeks compensatory, general and punitive damages. (*Id.* at PageID 10.)

By way of background, Ross was arrested on July 14, 2013. On December 19, 2013, a grand jury returned a seven-count indictment charging Ross with two counts of aggravated robbery, one count of aggravated burglary, one count of attempted second degree murder, one count of aggravated

4

assault, and two counts of employing a firearm with the intent to commit a felony. Those charges are pending. *See* http://jssi.shelbycountytn.gov/ (Indictment #13 06265). On March 13, 2014, the grand jury returned a second indictment arising from the events of July 13, 2013. That indictment was identical to the previous indictment except that the charges of attempted second degree murder and aggravated assault were eliminated. *See id.* (Indictment #14 01356).

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see

5

how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have

no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

To state a claim under 42 U.S.C. § 1983,[2] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The vague and conclusory allegations of Plaintiff's complaint are insufficient to state a plausible claim against any Defendant. The allegations that Defendant Greer "fabricated" and "manufactured" evidence are contradicted by ¶ 14 of the complaint, which itemizes the items seized during the search of Plaintiff's residence, including a scale, a skull cap, and clothing. The allegations that Defendants Wharton and Armstrong, who are, respectively, the mayor of Memphis and the Police Director, were aware of the unconstitutional conduct of Defendant Greer and

---

[2] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

encouraged it by the existence of a longstanding, deeply rooted custom are unsupported by any actual facts. In light of the fact that Greer actually did seize the items mentioned from Plaintiff's home, as he concedes, the nature of the so-called longstanding, deeply rooted custom is not specified. At most, the complaint alleges that Defendant Greer arrested Plaintiff despite the fact that the items seized during a search of his residence were not mentioned by the victims during their initial interviews with police. The complaint does not reveal whether Reginald Ross or Gathright implicated Plaintiff in the robberies and burglary or whether Currie or other witnesses identified Plaintiff.

In addition, Plaintiff's complaint is time barred. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). A claim for false arrest or imprisonment accrues at the time of arrest or, at the latest, when detention without legal process ends. *Wallace v. Kato*, 549 U.S. 384, 391-92, 397 (2007).[3]

---

[3] The Supreme Court explained:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* — when, for example, he is bound over by a magistrate or arraigned on charges. . . . Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful*
> (continued...)

A Fourth Amendment claim based on an allegedly unlawful arrest accrues at the time of arrest. *Fox v. DeSoto*, 489 F.3d 227, 233, 235 (6th Cir. 2007). The complaint alleges that Plaintiff was arrested and jailed on July 14, 2013. He was arraigned two days later, on July 16, 2013. *See* http://jssi.shelbycountytn.gov/ (Booking # 13125515). The statute of limitations for the false arrest claim began to run on that date, and it expired one year later, on July 16, 2014. Plaintiff's complaint was received by the Clerk on July 28, 2014, and the false arrest claim is, therefore, time barred.[4]

A claim based on an unlawful search and seizure accrues on the date of the search. *Michel v. City of Akron,* 278 F. App'x 477, 480 (6th Cir. 2008). Here, the search occurred on July 14, 2014. Therefore, the search and seizure claim is also time barred.

Finally, any claims concerning the District Attorney's charging decisions and the length of time between arrest and trial are not asserted against any named Defendant. Plaintiff may not amend

---

[3](...continued)
*institution* of legal process. . . . "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." . . . Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was instituted against him, and the statute [of limitations] would have begun to run from that date.

*Id.* at 389-90 (emphasis in original; footnote and citations omitted); *see also id.* at 390 n.3 ("This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest. While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time.").

[4] Plaintiff is not entitled to the benefit of the "mailbox rule" stated in *Houston v. Lack,* 487 U.S. 266, 270-71, 276 (1988), because his complaint does not appear to have been mailed from the Jail. (*See* ECF No. 1-1).

his complaint to add Amy Weirich, the District Attorney General for the Thirtieth Judicial District at Memphis, as a party because she is immune from any claim for money damages. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders,* 668 F.3d 344, 351 (6th Cir. 2012). For that reason, they cannot be sued for malicious prosecution. *O'Neal v. O'Neal*, 23 F. App'x 368, 370 (6th Cir. 2001); *see also Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2004) (noting that "prosecutors are absolutely immune from many malicious prosecution claims"); *Roybal v. State of Tenn. Dist. Attorney's Office*, 84 F. App'x 589 (6th Cir. 2003).

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6)

10

should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). The deficiencies in Plaintiff's § 1983 claim cannot be cured by amendment because the complaint is time barred.

Therefore, the Court DISMISSES Plaintiff's complaint for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir.

1997). *McGore* sets out specific procedures for implementing the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 733 F.3d 175, 177-78 (6th Cir. 2013), *cert. granted,* 82 U.S.L.W. 3675 (U.S. Oct. 2, 2014) (Nos. 13-1333, 13A985).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

     s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE